# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | |
|---|---|
| ROY ANDERSON, and <br> SHARON ANDERSON, spouse <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN HONDA MOTOR CO., INC., <br> Serve: CSC – LAWYERS INCORPORATING <br> SERVICE <br> 2710 Gateway Oaks Drive, Suite 150N <br> Sacramento, CA 95833-3505 <br><br> Defendant. | Case No.: <br><br> **PERSONAL INJURY-** <br> **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW plaintiffs Roy and Sharon Anderson, and for their Complaint against American Honda Motor Co., Inc. state as follows:

## INTRODUCTION

1. Plaintiff Roy Anderson is an adult resident and citizen of St. Louis County, State of Missouri. On September 15, 2020 he was injured in a crash in Iron County, Missouri while driving his 2020 Honda Pioneer 1000 utility terrain vehicle ("UTV") (VIN: 1HFVE04K0l4400226) due to its defective steering system that unknown to him at the time was subject to a recall 21-711 for a defective steering component.

2. The subject Honda Pioneer was purchased new from Big St. Charles Motor Sports, LLC in St. Charles, Missouri.

## PARTIES, JURISDICTION AND VENUE

3. Plaintiffs are residents and citizens of St. Louis County, Missouri.

4. Defendant American Honda Motor Co., Inc. ("AHM") is a California corporation with its principal place of business in Torrance, Los Angeles County, California and may be served with process through its registered agent at the above-listed address.

5. Defendant AHM is and was in the business of, *inter alia*, designing, engineering, manufacturing, distributing and/or selling vehicles under various brand names, including Honda vehicles, specifically including the Honda Pioneer.

6. At all times relevant to this action, AHM was in the business of supplying UTVs for use on off-road areas and held itself out as having special expertise in the industry.

7. Defendant AHM is subject to the general jurisdiction of this Court, in that it is a corporation conducting substantial business within the State of Missouri by maintaining continuous and systematic contacts with the State of Missouri, including but not limited to:

    a. AHM, through its efforts or that of its parent, subsidiary or affiliated companies, claims:

        i. Honda established its first U.S. business operations, a storefront in Los Angeles, in 1959;

        ii. $21.1 billion cumulative investment in United States operations across 75 facilities;

        iii. Employment of 31,000 workers in the United States, constituting a $2.5 billion payroll in 2018;

        iv. Honda dealerships provide 159,000 jobs in the United States;

        v. Its South Carolina manufacturing plant is the exclusive global production home of side-by-side vehicles, including the Honda Pioneer series. The plant celebrated its 20th anniversary in July 2018, with the completion of a

$45 million expansion and the addition of 250 new jobs to meet the growing demand for side-by-sides.

vi. In 2018, Honda associates in the United States were issued 275 global patents;

vii. United States plants manufactured nearly 2/3 of the Honda and Acura vehicles sold in America in 2018;

viii. Vehicles, products, parts and components are built at 12 United States plants;

ix. 14 R&D facilities in the United States perform all aspects of product development; and

x. Honda began production of the Pioneer line of side-by-sides in June 2013.

b. AHM sold and delivered Honda vehicles to persons, firms or corporations via its distributors, dealers, wholesalers, brokers and others with knowledge or reason to foresee that said vehicles would be shipped and used in interstate commerce and would reach the market of Missouri users or consumers particularly in this case through is authorized dealer Big St. Charles Motor Sports, LLC in St. Charles, Missouri;

c. AHM utilized authorized dealers throughout the State of Missouri to sell Honda vehicles that it has injected into the stream of commerce with knowledge or reason to foresee that said vehicles would be sold in the State of Missouri;

d. AHM utilized authorized service centers throughout the State of Missouri to service Honda vehicles that it has injected into the stream of commerce with

knowledge or reason to foresee that said vehicles would be serviced in the State of Missouri;

e. AHM utilized authorized parts distributors throughout the State of Missouri to sell replacement parts for Honda vehicles that it has injected into the stream of commerce with knowledge or reason to foresee that said replacement parts would be purchased and/or installed in vehicles in the State of Missouri;

f. AHM transports new Honda vehicles on Missouri highways and railways for distribution throughout the State of Missouri and the United States; and/or

g. AHM transports used Honda vehicles on Missouri highways and railways for distribution throughout the State of Missouri and the United States.

8. According to Honda's 2020 Digital FactBook, AHM is responsible for sales, marketing, service, distribution, import and export of Honda products in the United States. As such, AHM is subject to the general jurisdiction and specific jurisdiction of this Court, in that it is a corporation conducting substantial business within the State of Missouri by maintaining continuous and systematic contacts with the State of Missouri, including but not limited to the matters set forth above by, on behalf of or in connection with other Honda entities.

9. AHM's business contacts with the State of Missouri are so continuous and systematic as to render it essentially at home in Missouri, and as such, this Court may exercise general jurisdiction over AHM.

10. AHM has purposely availed itself of the privilege of conducting business in the State of Missouri and has thereby consented to the jurisdiction of this Court. AHM's conduct and connection with the State of Missouri are such that it could reasonably anticipate being hailed into court in the State of Missouri.

11. AHM is subject to the specific jurisdiction of this Court in that the vehicle at issue, a 2020 Honda Pioneer 1000 (hereinafter "subject Pioneer"):

    a. Was designed, tested, manufactured and/or distributed by AHM;

    b. Was distributed by or on behalf of AHM to an authorized Honda dealership Big St. Charles Motor Sports, LLC located in St. Charles County, Missouri;

    c. Was originally sold to a consumer by an authorized AHM dealership located in St. Charles County, Missouri;

    d. Was registered and garaged in the State of Missouri;

    e. Was involved in a crash in Ironton, Iron County, Missouri; and/or

    f. Caused injury to Roy Anderson in Ironton, Iron County, Missouri.

12. AHM, through the acts of its employees or agents, has submitted itself to the jurisdiction of this Court pursuant to the State of Missouri's long arm statute, Mo. Rev. Stat. § 506.500, through its transaction of business within this state and the commission of a tortious act within this state.

13. Venue in this Court is proper pursuant to Mo. Rev. Stat. § 508.010, in that Roy Anderson was first injured in Iron County, Missouri as a result of the defective and unreasonably dangerous condition of the subject Pioneer and the wrongful and negligent conduct of AHM.

**FACTS COMMON TO ALL COUNTS**

14. On or about September 15, 2020, Roy Anderson was the driver of the subject Pioneer.

15. Roy Anderson while seat belted was giving his seat belted friends a tour of his property at 235 Venezia Drive, Ironton, Iron County, Missouri 63650.

16. As a result of a recalled defect in the electric power steering system within the subject Pioneer, Mr. Anderson lost steering control and the subject Pioneer overturned (the "rollover incident").

17. Subsequent to the rollover, AMH was notified of the crash and a joint inspection took place at Big St. Charles Motor Sports, LLC service facility. The joint inspection involved a designated Honda engineer Garrett Windust and Mr. Anderson's engineer Kyle Minden P.E. The joint inspection of the recalled steering component showed its failure that led to the rollover crash. See Fig. 1 -4.



*Figure 1*



Figure 25  View illustrating lower steering u-joint and bolt locations (see arrows)

*Figure 2*



Figure 26　　As-removed lower steering u-joint and bolts (see arrows)

*Figure 3*



Figure 33　View illustrating damaged splines near split in yoke for lower steering joint B

*Figure 4*

18.　As a direct and proximate result of the rollover incident, Roy Anderson sustained permanent injuries to his right shoulder.

19.　As a direct and proximate result of the rollover incident, Roy Anderson has sustained significant damages, including past and future medical expenses; past loss of income; conscious pain, suffering and psychological anguish and loss of enjoyment of life.

## COUNT I – STRICT LIABILITY

20. Plaintiffs adopt by reference as if fully set forth herein the preceding paragraphs of this Complaint.

21. At all times relevant hereto, AHM was actively engaged in the business of designing, manufacturing, marketing, warranting, distributing and/or selling the Honda Pioneer 1000, amongst other vehicles.

22. Prior to the rollover incident, AHM designed, manufactured, assembled, inspected, tested, distributed, placed into the stream of commerce and/or sold the subject Pioneer in the normal course of its business for use by the general public.

23. At the time the subject Pioneer left the control of AHM, the subject Pioneer was defective and unreasonably dangerous when put to reasonably anticipated use.

24. The subject Pioneer was defective and unreasonably dangerous due to its electric power steering system and defects in the lower steering joint and yoke bolt, including but not limited to, the following:

    a. The vehicle, including its steering components that impact handling and stability performance, was not subjected to adequate testing;

    b. The vehicle, including its steering components that impact handling and stability performance, were not subjected to adequate Failure Mode Effects Analysis or Finite Element Analysis;

    c. The vehicle lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition created by its electric power steering system or the risk of injury from such hazardous condition;

d. The vehicle did not employ safety designs available at the time of manufacture and/or failed to employ safer alternative designs;

e. The vehicle was defective as marketed, in that the packaging, advertising and marketing campaign and programs undertaken by AHM and its distributors misled consumers as to the safety features of the vehicles;

f. AHM failed to provide adequate warnings to consumers of the dangerous condition of the vehicle;

g. The vehicle and/or some or all of its materials contained a manufacturing defect; and

h. In other respects unknown to Plaintiffs at this time, but which may become known prior to trial.

25. The subject Pioneer was expected to and did reach the hands of its users, including Mr. Anderson, without substantial change or modification, and was in substantially the same condition of the subject rollover incident as it was when it left the possession and control of AHM.

26. The subject Pioneer was used by Mr. Anderson in a reasonably anticipated manner.

27. AHM knew or should have known that the subject Pioneer would be used without inspection for defect and represented that the subject Pioneer could be safely used for the ordinary purposes for which it was intended.

28. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject Pioneer, Mr. Anderson sustained permanent injuries to his right shoulder.

29. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject Pioneer, Roy Anderson has sustained significant damages, including past

and future medical expenses; past loss of income; conscious pain, suffering and psychological anguish and loss of enjoyment of life.

WHEREFORE, plaintiff Roy Anderson prays that this Court enter judgment against defendant American Honda Motor Co. Inc. for a reasonable sum of damages as will fairly and justly compensate him, for his costs incurred herein and for such other and further relief as the Court may deem just and proper.

## **COUNT II – NEGLIGENCE**

30. Plaintiffs adopt by reference as if fully set forth herein the preceding paragraphs of this Complaint.

31. At all times relevant hereto, AHM was actively engaged in the business of designing, manufacturing, marketing, warranting, distributing and/or selling Pioneer vehicles.

32. As a motor vehicle designer, manufacturer, distributor and/or seller, AHM knew that users of its vehicles could be injured by the performance of its vehicle systems, and the extent of their injuries would frequently be determined by the design and performance of such systems.

33. AHM had a duty to exercise reasonable care in the design, testing, manufacture, distribution and/or sale of the subject Pioneer.

34. AHM breached its duty to exercise reasonable care in the design, testing, manufacture, distribution and/or sale of the subject Pioneer in multiple respects, including, but not limited to:

    a. The vehicle, including its steering components that impact handling and stability performance, was not subjected to adequate testing;

b. The vehicle, including its steering components that impact handling and stability performance, were not subjected to adequate Failure Mode Effects Analysis or Finite Element Analysis;

c. The vehicle lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition created by its electric power steering system or the risk of injury from such hazardous condition;

d. Selling the vehicle knowing it was defective; and

e. In other respects unknown to Plaintiffs at this time, but which may become known prior to trial.

35. As a direct and proximate result of the negligent acts and/or omissions of AHM, Mr. Anderson sustained permanent injuries to his right shoulder.

36. As a direct and proximate result of the negligent acts and/or omissions of AHM, Roy Anderson has sustained significant damages, including past and future medical expenses; past loss of income; conscious pain, suffering and psychological anguish and loss of enjoyment of life.

WHEREFORE, plaintiff Roy Anderson prays that this Court enter judgment against defendant American Honda Motor Co. Inc. for a reasonable sum of damages as will fairly and justly compensate him, for his costs incurred herein and for such other and further relief as the Court may deem just and proper.

## COUNT III – BREACH OF EXPRESS WARRANTIES

37. Plaintiffs adopt by reference as if fully set forth herein the preceding paragraphs of this Complaint.

38. AHM placed the subject vehicle into the stream of commerce and the foregoing constituted express warranties by AHM that the vehicle was safe for the ordinary and particular purposes for which it was sold.

39. AHM breached its express warranties in the vehicle was not safe for its intended and foreseeable use.

40. As a direct result of AHM's acts or omissions as set forth above, and the defective Pioneer as described herein, Plaintiffs suffered the injuries and damages claimed herein.

41. As a direct result of AHM's acts and the defective Pioneer as described herein, Roy Anderson sustained personal injuries.

42. As a direct result of AHM's acts and the defective Pioneer as described herein, Roy Anderson incurred medical expenses for his treatment, endured pain and suffering, permanent scarring, disfigurement and impairment and lost wages.

WHEREFORE, plaintiff Roy Anderson prays for judgment against Defendant American Honda Motor Co. Inc. for a reasonable sum of damages as will fairly and justly compensate him, for his costs incurred herein and for such other and further relief as the Court may deem just and proper.

## COUNT IV – BREACH OF IMPLIED WARRANTIES

43. Plaintiffs adopt by reference as if fully set forth herein the preceding paragraphs of this Complaint.

44. AHM had reason to know and did know the ordinary and intended uses, as well as the particular uses, of the subject Pioneer.

45. AHM also had reason to know the buyer and intended users of the vehicle, including Roy Anderson, relied upon AHM's skill, judgment, representations and endorsements

with respect to the design, assembling, manufacturing, testing, inspection, operation and the development and distribution of the vehicle.

46. AHM impliedly warranted that the vehicle was fit for the ordinary and intended purposes, as well as for its particular uses, and Plaintiff Roy Anderson and other users of the vehicle sold by AHM were among the beneficiaries of AHM's implied warranties.

47. Despite AHM's warranties, the vehicle was unfit for its ordinary and intended purposes, and for its particular purposes, because of the defects at issue herein.

48. AHM breached its implied warranties as the vehicle was not fit and was unsuitable for its ordinary and intended purposes and for the particular purposes for which it was required.

49. As a direct result of AHM's acts or omissions as set forth above, and the defective product as described herein, Plaintiffs suffered the injuries and damages claimed herein.

WHEREFORE, plaintiff Roy Anderson prays for judgment against Defendant American Honda Motor Co. Inc. for a reasonable sum of damages as will fairly and justly compensate him, for his costs incurred herein and for such other and further relief as the Court may deem just and proper.

### COUNT V - LOSS OF CONSORTIUM

50. Plaintiffs adopt by reference as if fully set forth herein the preceding paragraphs of this Complaint.

51. At all times pertinent hereto, Sharon Anderson is and was the lawful spouse of Roy Anderson and is entitled thereby to his care, comfort, support, companionship, consortium and services.

52. As a direct and proximate result of the circumstances set forth in this Complaint and the injuries sustained by Roy Anderson, Sharon Anderson has been caused to suffer loss of care, comfort, support, companionship, consortium and services of her spouse.

WHEREFORE, plaintiff Sharon Anderson prays that this Court enter judgment against defendant American Honda Motor Co. Inc. for the injuries and damages described above, for an award of damages that is fair and reasonable under the circumstances, for an award of costs incurred in the prosecution of this case and for such other and further relief as this Court may deem just and proper.

Plaintiffs demand a trial by jury on all issues.

Respectfully submitted,

**THE DeFEO LAW FIRM**

/s/ *Daniel T. DeFeo*
Daniel T. DeFeo, #35161
Erika V. Dopuch, #70031
4435 Main Street, Suite 880
Kansas City, MO 64111
Telephone: (816) 581-4600
Facsimile: (816) 581-4646
ddefeo@defeolaw.com
edopuch@defeolaw.com

And

**THE WILBERS LAW FIRM, LLC**
John L. Wilbers #51848
130 S. Bemiston, Suite 406
St. Louis, MO 63105
Telephone: (314) 721-3040
Facsimile: (314) 721-3052
jwilbers@thewilberslawfirm.com

*Attorneys for Plaintiffs*